UNITED STATES of America, Appellee,

v.

Bernard IVORY, Appellant.

No. 93–3406.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 18, 1994.

Decided July 21, 1994.

Alfredo Parrish, Des Moines, IA, argued, for appellant.

Steven Colloton, Cedar Rapids, IA, argued, for appellee.

Before McMILLIAN, WOLLMAN and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Defendant Bernard Ivory, having been tried and convicted, and then granted a new trial, appeals from an interlocutory order entered in the United States District Court[1] for the Northern District of Iowa denying his motions for dismissal of the indictment and for sanctions. *United States v. Ivory*, No. CR92–2023 (N.D.Iowa Sept. 23, 1993). For reversal, defendant argues that the district court (1) erred in holding that a retrial will not violate his double jeopardy rights and (2) abused its discretion in failing to dismiss the indictment or grant sanctions on grounds of prosecutorial misconduct. For the reasons discussed below, we dismiss the appeal for lack of jurisdiction.

## I. Background

On December 28, 1991, in Waterloo, Iowa, police responded to reports that gun shots had been fired at an establishment called the West Coast Connection. When the police arrived, defendant, who matched the description of the person who allegedly fired the

---

1. The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

shots, was standing by his Ford Bronco across the street from the West Coast Connection. A man named Willie March was seated in the car. The police approached defendant and, after briefly questioning him, placed him under arrest. They searched his Bronco and the jacket he was wearing. Inside the Bronco, they found a .44 magnum Ruger, a .44 magnum shell, and a .44 magnum bullet. In the jacket, they found 4.12 grams of crack cocaine.

In February of 1993, defendant was tried and found guilty by a jury of possession of crack cocaine with intent to distribute, use of a firearm in relation to a drug offense, and possession of a firearm and ammunition following a felony conviction. In defense of the gun charge, defendant denied possession of the gun found in the Bronco. During the two-day trial, March testified under subpoena. He previously had made a statement to the police and testified before the grand jury that he believed defendant fired the shots at the West Coast Connection. At trial, however, he recanted his earlier statements and testified that he never saw defendant with a gun or crack cocaine. His prior statements were the only evidence linking defendant to the shots fired in the West Coast Connection. The government relied on March's prior statements to establish by inference that defendant possessed the gun found inside the Bronco.

During the rebuttal portion of his closing argument, the prosecutor made the following unfounded remark regarding March's recanted testimony: "now in trial, after [March] has had the opportunity to talk to [the defense attorney], he starts seeing the defendant, and then all at once he doesn't see anything. He doesn't want to be involved." Defendant objected to the implication that the defense had somehow influenced March's testimony and moved for a mistrial. The motion was denied.

Meanwhile, on February 20, 1993, two days before the trial had begun, one of the Waterloo police officers, who was also a member of the Tri–County Drug Task Force, applied in state court for a search warrant for March's residence. The officer's support-

ing affidavit stated that he had information that March and another individual were selling crack cocaine from March's home and exchanging crack cocaine for firearms. The warrant was issued by the state court judge. However, the police did not execute the warrant until after the presentation of evidence in defendant's trial, including March's testimony. In the early morning hours of February 24, 1993, the Tri–County Drug Task Force executed the search warrant at March's home and found, among other things, crack cocaine, a shotgun and shells, a .22 caliber revolver, and .22 and .25 caliber bullets. March was arrested. The jury in defendant's trial resumed deliberations at 9:00 a.m. that same morning and later that afternoon returned a verdict finding defendant guilty on all four counts in the indictment.

Defendant moved for a new trial. The district court granted defendant's motion for a new trial because of prosecutorial misconduct during closing argument and the prosecution's violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (*Brady*). *United States v. Ivory,* No. CR92–2023 (N.D.Iowa July 29, 1993).[2] The district court reasoned that the prosecutor's comment on rebuttal in closing argument, suggesting that the defense attorney had influenced March's testimony, was improper, not cured by the jury instructions, and not an invited response to the defense attorney's closing argument. *Id.* at 3–11. The district court also reasoned that the information contained in the affidavit supporting the application for the warrant to search March's home was actually or constructively known to Waterloo police officers who were members of the "prosecution team," and that the information would have been useful to defendant in cross-examining March and presenting a defense based on the theory that it was actually March who possessed the gun and the crack cocaine found on the night of defendant's arrest. *Id.* at 11–19. The district court held that a *Brady* violation had occurred "given the importance of March's testimony, and the lack of overwhelming evidence against the Defendant." *Id.* at 19. The district court

2. By order dated August 12, 1993, the district court released defendant pending retrial.

concluded that the cumulative effect of the improper comment by the prosecutor in closing argument and the *Brady* violation required a new trial. *Id.* at 11.

Defendant subsequently moved to dismiss the indictment and for sanctions. Defendant moved for dismissal on double jeopardy grounds and moved for sanctions on the basis of the district court's discretionary supervisory powers. The district court denied the motions and set a new date for trial. *Id.* (Sept. 23, 1993). Defendant then filed an interlocutory appeal of the district court's September 23, 1993, collateral order pursuant to the holding in *Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977) (*Abney* ) (pretrial orders rejecting claims of former jeopardy are "final decisions" and appealable under 28 U.S.C. § 1291), and moved in the district court for a stay pending appeal. The government did not oppose the motion to stay, and the district court granted it. *United States v. Ivory,* No. CR92–2023 (N.D.Iowa Oct. 1, 1993). In its order granting the stay, the district court held that defendant's double jeopardy claim was frivolous because defendant had failed to make a "colorable showing of previous jeopardy and the threat of repeated jeopardy." *Id.* at 1, *citing United States v. Brown,* 926 F.2d 779, 781 (8th Cir.1991) (per curiam) (*Brown* ); *United States v. Grabinski,* 674 F.2d 677, 678–79 (8th Cir.) (en banc) (per curiam) (*Grabinski* ), *cert. denied,* 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982).

## II.  Discussion

### A.  Double jeopardy

■ Defendant argues that the district court erred in denying his motion to dismiss the indictment on double jeopardy grounds. The government contends that this court lacks jurisdiction to review defendant's double jeopardy claim under the holding in *Grabinski.* In *Grabinski,* we held that a district court's order denying a defendant's motion to dismiss based on a claim of double jeopardy is appealable "only if a colorable claim is made." 674 F.2d at 678. When a district court denies a motion to dismiss based on violation of the double jeopardy clause, the district court is required to make a written finding of whether the motion is frivolous or nonfrivolous. *Id.* at 679. If the motion is found to be frivolous, the filing of a notice of appeal does not divest the district court of jurisdiction; this court then reviews the appeal on an expedited schedule. *Id.* On appeal, the district court's denial of a motion to dismiss on double jeopardy grounds is subject to *de novo* review. *United States v. Allen,* 984 F.2d 940, 941 (8th Cir.1993). If we determine that the defendant has failed to state a colorable double jeopardy claim, the appeal on double jeopardy grounds will be dismissed for lack of jurisdiction. *Grabinski,* 674 F.2d at 680.

In the present case, the district court followed the directions of *Grabinski* and specifically found that defendant's double jeopardy claim was frivolous. Slip op. at 1–2 (Oct. 1, 1993). The district court relied upon its earlier reasoning that because defendant's conviction was set aside for trial errors, not insufficiency of the evidence, a new trial would be proper and would not implicate defendant's rights under the double jeopardy clause. Slip op. at 2–3 (Sept. 23, 1993) (citing *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289–90, 102 L.Ed.2d 265 (1988); *Tibbs v. Florida,* 457 U.S. 31, 39–40, 102 S.Ct. 2211, 2216–17, 72 L.Ed.2d 652 (1982); *Satter v. Leapley,* 977 F.2d 1259, 1263 (8th Cir.1992)).

■ Defendant argues that he has presented a meritorious double jeopardy claim under the holding in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). In *Oregon v. Kennedy,* the Supreme Court held that a defendant may invoke the double jeopardy bar to prevent retrial if the first trial ended in a mistrial as a result of prosecutorial or judicial conduct intentionally designed to provoke the defendant's motion for a mistrial. *Id.* at 673–76, 102 S.Ct. at 2088–90. In the present case, the district court rejected defendant's claim that defendant's double jeopardy rights were implicated under the holding in *Oregon v. Kennedy.* The district court reasoned that, even if *Oregon v. Kennedy* applied, defendant made no showing that the prosecution had attempted to invoke a mistrial. Slip op. at 2 (Oct. 1, 1993). In its previous order rejecting this double jeopardy argument, the district court

found that the prosecutor was "essentially unaware" of the impropriety of his comment in closing argument at the time it was made and was also unaware of the *Brady* violation. We hold that these findings by the district court are not clearly erroneous. *See United States v. Standefer,* 948 F.2d 426, 432 (8th Cir.1991) (finding that government did not intend to goad defendants into moving for mistrial was not clearly erroneous). Moreover, the district court noted that the prosecution in fact "strongly and unequivocally" objected to defendant's motion for a mistrial, and the motion was denied. Slip op. at 4 (Sept. 23, 1993). Based upon these facts, we agree with the district court's conclusion that defendant has failed to make a colorable claim under the double jeopardy clause. Accordingly, we dismiss defendant's appeal of his double jeopardy claim for lack of jurisdiction.

## B. Sanctions

Defendant separately argues that, even if *Oregon v. Kennedy* does not apply, the district court nevertheless abused its discretion in refusing to dismiss the indictment or subject the government to sanctions to penalize the prosecution for its misconduct in the first trial and the resulting prejudice to defendant. Defendant requested as sanctions that the district court suppress the testimony of March and other government witnesses, deny the government the opportunity to present rebuttal closing argument, and require the government to pay the cost of defendant's appeal and retrial. In response, the government argues that this court lacks jurisdiction to consider these arguments on this appeal. We agree.

The federal courts of appeals have jurisdiction over appeals "from all final decisions of the district courts." 28 U.S.C. § 1291. In criminal cases, this means that appellate review is not available until after conviction and sentencing. *Flanagan v. United States,* 465 U.S. 259, 263, 104 S.Ct. 1051, 1053–54, 79 L.Ed.2d 288 (1984) (*Flanagan*). A few exceptions to this finality rule are permitted; under the collateral order doctrine, prejudgment appellate review is allowed in a criminal case for trial court orders

which conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and are effectively unreviewable on appeal from final judgment. *Id.* at 265, 104 S.Ct. at 1054–55, *citing Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978). This test has been applied "with the utmost strictness in criminal cases." *Flanagan,* 465 U.S. at 265, 104 S.Ct. at 1054–55. As a result, prejudgment appellate review is available in criminal cases only for interlocutory orders (1) denying motions to reduce bail, (2) denying motions to dismiss the indictment on double jeopardy grounds, or (3) denying motions to dismiss the indictment on speech and debate grounds. *Id.* at 266, 104 S.Ct. at 1055. The Supreme Court has explained that, for each of these types of orders, the legal and practical value of the right asserted would be destroyed if not vindicated before trial. *Id., citing United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 266, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1982) (quoting *United States v. MacDonald,* 435 U.S. 850, 860, 98 S.Ct. 1547, 1552–53, 56 L.Ed.2d 18 (1978)).

We hold that the district court's denial of defendant's motion for trial sanctions is not within one of the recognized exceptions to the finality requirement in 28 U.S.C. § 1291 and therefore not subject to interlocutory appellate review. To the extent defendant seeks to exclude evidence and bar closing argument at retrial, defendant's request is analogous to a motion to suppress evidence based upon an alleged Fourth Amendment violation and, as such, is not immediately appealable. *See DiBella v. United States,* 369 U.S. 121, 129, 82 S.Ct. 654, 659, 7 L.Ed.2d 614 (1962) (order granting or denying a motion to suppress not immediately appealable). To the extent defendant seeks the expenses of his appeal and retrial, that issue is certainly reviewable on appeal from final judgment. As for the district court's denial of defendant's request for dismissal of the indictment to redress the prosecution's errors, we have already determined that defendant's claim does not satisfy the criteria in *Oregon v. Kennedy.* The mere fact that defendant moved for dismissal

of the indictment, and denial of that motion will result in a trial, does not in itself create a colorable double jeopardy claim. *See, e.g., Grabinski,* 674 F.2d at 678 ("orders denying defendant's motions to dismiss because of alleged vindictive prosecution, denial of a speedy trial, and lack of probable cause are not final and, therefore, are not appealable orders"). In *United States v. Slay,* 858 F.2d 1310 (8th Cir.1988), for example, the defendants were tried and convicted, and then granted a new trial in part because of an error in the indictment. The indictment was modified and a new trial set. The defendants moved for dismissal of the indictment on grounds that a retrial upon the modified indictment would violate their Fifth Amendment grand jury rights. The district court denied the motion to dismiss, and the defendants brought an interlocutory appeal. This court held that it lacked appellate jurisdiction. Although the defendants would be haled into court and subject to a second trial, they retained the right to raise the validity of the modified indictment on appeal from final judgment. *Id.* at 1313–14. Similarly, we hold in the present case that we lack appellate jurisdiction to review the denial of defendant's motion to dismiss the indictment.

Defendant's appeal is therefore dismissed.